HERSCHALL HOLLAND V. THE STATE.

No. 4102. Decided May 31, 1916.

Rehearing denied June 21, 1916.

**1.—Burglary—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Suspended Sentence—Evidence—Charge of Court—Practice.**

Under the statute, where defendant files a sworn plea seeking a suspension of his sentence in the event of conviction, no presumption is indulged in his favor that he has not so committed a felony, but he must prove it and if there is no proof of this fact, then the court should not submit the issue of suspended sentence to the jury, and where this was the case, there was no reversible error.

**3.—Same—Suspended Sentence—Evidence—General Reputation—Hearsay.**

Where the defendant claims suspended sentence, the State can introduce testimony not only as to his general reputation but can also prove specific instances of crimes, misdemeanors, conduct, and habits, although he has never before been convicted of a felony. However, the court should not permit purely hearsay testimony.

**4.—Same—Suspended Sentence—Rule Stated.**

Where defendant has filed his plea for suspension of sentence, the State is not bound to wait until he himself offers proof that he has committed no felony and of his good reputation, habits, etc., but may introduce such proof at the time of proving the offense itself; unless the plea is withdrawn.

**5.—Same—General Reputation—Sufficiency of the Evidence.**

Where, upon trial of burglary, the offense was clearly proved by the State, and defendant's general reputation as a peaceable, law-abiding man was shown to be bad, and defendant offered no proof in support of his claim and plea for a suspended sentence that he had never before been convicted of a felony, the court did not err in not submitting this issue, and there was no reversible error.

**6.—Same—Suspended Sentence—Hearsay—Harmless Error.**

Where, upon trial of burglary, the defendant filed a sworn plea for a suspended sentence in the event of conviction, but offered no proof that he had never

before been convicted of a felony, and the State anticipating such evidence intro-
duced testimony as to the defendant's bad general reputation for law and peace,
and was permitted also to introduce testimony that the State's witness had heard
that defendant's picture appeared in the rogue's gallery but had no knowledge
of this himself except by hearsay, the error of admitting this hearsay testimony
was harmless, in view of the fact that the defendant received the lowest punish-
ment, although clearly guilty, and that the court submitted no charge at all on
the issue of suspended sentence, but instructed the jury upon their inquiry that
they had no right to pass on this question. Davidson, Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below
before the Hon. Robert B. Seay.

Appeal from a conviction of burglary; penalty, two years imprison-
ment in the penitentiary.

The opinion states the case.

*H. R. Williams*, for appellant.

*C. C. McDonald*, Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of
burglary and assessed the lowest punishment.

The evidence was amply sufficient to sustain the verdict. We see no
necessity of reciting it.

Appellant, on the eve of the trial, filed his sworn plea seeking a sus-
pension of his sentence in case he was convicted. When this is the
case the statute enacts (art. 865, Vernon's C. C. P.) that "the court
shall permit testimony . . . as to the general reputation of de-
fendant to enable the jury to determine whether to recommend a sus-
pension of sentence and as to whether appellant has ever before been
convicted of a felony." The statute also enacts (art. 856b): "That
in no case shall sentence be suspended except when the proof shall show,
and the jury shall find in their verdict, that the defendant has never
before been convicted of a felony in this State, or any other State."

We have repeatedly construed these statutes in our previous decisions.
It is unnecessary to collate them here.

In the particular mentioned, we think the statute means what it says
and says what it means; that is, that it is encumbent upon an accused
himself when he pleads for a suspended sentence to prove that he has
never before been convicted of a felony in this or any other State.
Under the statute, no presumption is indulged in his favor that he has
not so committed a felony. He must prove it. If there is no proof of
this fact, then the court should not submit the issue of suspended sen-
tence to the jury for a finding at all, and that was the case in this
instance.

Wherever an accused pleads for a suspended sentence by proper sworn
plea in time, the statute is clear when it says, then the court shall per-
mit testimony as to the general reputation of the accused to enable the
jury to determine whether or not to recommend a suspension of the
sentence. We think this is clear and means what it says. And taking

the whole statute and the object and purpose of it, we have held, and still hold, that not only can the State introduce testimony as to the general bad reputation of an accused, but can also prove specific instances of crimes, even minor misdemeanors and the general conduct, habits, etc., of an accused, so that the jury, from all the testimony, even if he has never before been convicted of a felony, can determine whether or not in their discretion they will recommend a suspension of his sentence. The court should not permit purely hearsay testimony as contradistinguished from general reputation or specific acts within the knowledge of the witness testifying.

Practically in all records coming before this court where an accused has plead for a suspended sentence, such plea, as in this instance, is filed on the very eve of the trial. The State can not, and does not, know that the accused will file such plea and is, therefore, frequently ill prepared, if prepared at all, to offer proof on such plea to disprove it. Hence, it is more necessary in order to reach the real intent of the law that the court shall be liberal to the State in admitting testimony on this issue. The State is not bound to wait until after an accused himself offers proof that he has committed no felony and of his good reputation, habits, etc., but may introduce such proof at the time of proving the offense itself. However, of course, if when the State offers such proof the accused should then withdraw his plea for a suspended sentence, the court should permit no proof on the subject.

Appellant has some bills of exceptions to the introduction by the State of some testimony along this line. They are qualified in a very lengthy statement by the trial judge. We think it unnecessary to recite this here, and we think it unnecessary to discuss the said suspended sentence law in a general way other than we have done, but think it necessary only to discuss it to the extent to decide the questions raised herein. We think the testimony in this case, without contradiction, affirmatively shows that appellant's general reputation as a peaceable and law-abiding man, and in some particulars also, was bad, and he offered no proof to show that he had never before been convicted of a felony. Hence, it was proper, as the court did, to refuse to submit that issue to the jury for a finding. Even if the court on that issue admitted pure hearsay testimony, it became harmless in the light of all the testimony and the fact that the jury assessed the lowest punishment.

The court correctly answered the inquiry of the jury when he. told them that, under the circumstances, they had no right to pass on the question of recommending a suspended sentence.

There is no reversible error shown by this record

The judgment is affirmed.

*Affirmed.*

## ON REHEARING.

### June 21, 1916.

PRENDERGAST, PRESIDING JUDGE.—In his motion for rehearing appellant again urges that it was reversible error for the court to per-

mit the question and answer by the State of the witness Harry Kendall, as follows: Q. "I will ask you if you don't know it to be a fact that his mug appears in the detectives' office up here, where they mug desperate characters, and that his mug is in other places that you know of?" A. "I heard Mr. DeWitt say in there a while ago that he was mugged, but I could not say that I know he was mugged," claiming that this was hearsay.

We considered this question fully at the time the opinion was prepared and handed down, and held the court should not permit hearsay testimony as contradistinguished from general reputation or specific acts within the knowledge of the witness testifying, and further, that even if the court on the issue of suspended sentence admitted pure hearsay testimony, it became harmless in the light of all the testimony and the fact that the jury assessed the lowest punishment. All of appellant's bills are along the same line. We then thought it unnecessary to take up this particular question and discuss it alone, as it was embraced within the discussion of all of them together. Neither did we then make any statement of the testimony. We will now do so.

Appellant plead for a suspended sentence. He neither testified himself nor offered any witness or other testimony in his behalf. This testimony objected to, as the record clearly shows, was offered solely to let the jury determine whether or not it would suspend his sentence. It was not offered nor admitted for any other purpose.

The uncontradicted testimony by the State showed that "just prior— two or three days before" February 5, 1916, Sammy Williams called the witness Harry Kendall into Graves's tailoring shop in Dallas, and Kendall swore: "At that time I had a conversation with Hershall Holland and Sammy Williams, . . . and Sammy Williams said that they were going to 'make' the Crowdus Drug Company, and that he would have some dope on hand and asked me if I could dispose of it in any way. . . . I told them this, that if they made the joint, it could be very easily disposed of and they could get a good price for it."

Mr. Mitchell, the manager of the Crowdus Drug Company, swore that the drug company's house was burglarized on the night of February 5, 1916. The store building was five stories and a basement. That the entry was made up the fire escape and by raising a window. They broke an iron bar, and the window was locked on the inside with a padlock. This padlock they also prized open. That the narcotics of the company were kept on the third floor in a room partitioned off and locked to itself. That they used the same instrument that they entered the building with to enter that padlock to the room where they kept these narcotics. That in addition to opening the window, they had to break two locks, that on the inside of the window and the door to where these narcotics were kept so as to reach them. That they stole 130 bottles of morphine, sixteen and two-thirds ounces, worth at wholesale $7.50 an ounce, and eleven bottles of cocaine, containing a half ounce each, and one bottle containing one ounce, altogether worth $156 at

wholesale. That the drug company recovered ninety-five bottles only of the stolen morphine and none of the cocaine.

Lane Wilson testified that a little after midnight on the night of February 5, 1916, Sammy Williams 'phoned him and procured from him his automobile. That that night about 1:30 said Williams and appellant together came to his house in said car. That he went out to where they were and found them with over a hundred bottles of morphine—he counted over a hundred. He got in the car with them, and they went down to his room in his mother's house and carried the stuff into his room. He swore: "I bought fifty bottles from Hershall Holland and paid him $125 for it. I paid that money to Hershall Holland." He further swore that the three then went to Harry Kendall's residence. Harry Kendall and his wife swore that they came there that night together. Kendall swore that on that occasion Hershall Holland or Sammy Williams, "one or the other, while they were both present there, said, 'We made the Crowdus Drug Company, that we climbed up the fire escape and jimmied the lock.' " That they left four bottles of the morphine there with him, intended as a gift to him. They tried to get him to go with them to Fort Worth to sell the "dope," but he advised against this. It seems that Lane Wilson was arrested for having said part of said morphine in his possession. While in jail he told Burford Jetty to get this "dope" and take it away from his house, which Jetty did. The officers caught on to this and recovered that much of the morphine from Jetty, which was identified as stolen from the drug company and returned to it.

From this uncontradicted testimony no one can doubt the guilt of appellant. It establishes his guilt beyond a doubt.

With this clear guilt of appellant established, the State sought to prevent the jury from suspending his sentence, and on the question of suspended sentence solely introduced the testimony above objected to.

The State sought to prove by said witness Harry Kendall that appellant's general reputation was bad as a peaceable, law-abiding citizen and honest man, but he said he could not say whether his reputation was good or bad, "but he had got a pretty rough name to be a kind of fighter, and that is all." That he could not say he is an honest man, but he was honest with his fellow citizens—with the boys that he dealt with. On recross-examination by the appellant, he swore: "He has got a bad reputation for fighting; he gets drunk and shoots and things like that." Mr. DeWitt, the detective, swore he knew appellant's general reputation for being a peaceable, honest, law-abiding citizen, and that it was bad. This, together with the objected to testimony, was all the testimony on this subject.

The admission over appellant's objection of what the witness swore Mr. DeWitt had told him was error, but as shown, the witness as a part of his answer expressly stated: "But I could not say that I know he was mugged." As stated, the jury assessed the lowest punishment, and we think that the admission of this testimony, under the circumstances of this case, does not present reversible error. Judge Hurt, in

Post v. State, 10 Texas Crim. App., 579, said: "If this court must reverse for every irregularity, though objected to, whether it tended to injure defendant or not, it would be almost impossible in a great many cases to legally convict. The action of the court in this matter was wrong, but no injury appearing therefrom, we can not make it a ground for reversal." To the same effect is Bond v. State, 20 Texas Crim. App., 421; Sadler v. State, ib., 196; King v. State, 42 Texas Crim. Rep., 108; Tinsley v. State, 52 Texas Crim. Rep., 91. A great many other cases to the same effect could be collated but we think it unnecessary.

The motion is overruled.

*Overruled.*

DAVIDSON, JUDGE (dissenting).—I dissent and will write briefly.

### July 3, 1916.

DAVIDSON, JUDGE (dissenting).—When the original opinion was announced I did not then enter my dissent. When the court overruled the motion for rehearing I noted my disagreement. I can not agree with some statements and conclusions found in the opinion of the majority, so I shall follow the record in such quotations as I think necessary.

Bill of exceptions No. 1, as contained in the record, is as follows: "Be it remembered that upon the trial of the above entitled and numbered cause, while Henry Kendall, a witness for the State, was in the witness stand in behalf of the State, the State introduced the following testimony, towit: Q. I will ask you if you don't know it to be a fact that his mug (meaning defendant's picture) appears in the detectives' office (meaning rogue's gallery) up here, where they mug desperate characters, and that his mug is in other places that you know of? I want you to tell me whether or not you have heard that? A. I heard Mr. DeWitt say in there a while ago that he was mugged." This is the testimony to which many objections were urged. These objections were all overruled and the testimony went before the jury. In the original opinion the majority of the court held that inasmuch as appellant had filed his plea for suspended sentence that "it is incumbent upon an accused himself when he pleads for a suspended sentence to prove that he had never before been convicted of a felony in this or any other State. Under the statute, no presumption is indulged in his favor that he had not so committed a felony. He must prove it. If there is no proof of this fact, then the court should not submit the issue of suspended sentence to the jury for a finding at all, and that was the case in this instance.

"Whenever an accused pleads for a suspended sentence by proper sworn plea in time, the statute is clear when it says, then the court shall permit testimony as to the general reputation of the accused to enable the jury to determine whether or not to recommend a suspension

of the sentence. We think this is clear and means what it says. And taking the whole statute and the object and purpose of it, we have held, and still hold, that not only can the State introduce testimony as to the general bad reputation of an accused, but can also prove specific instances of crimes, even minor misdemeanors and the general conduct, habits, etc., of an accused, so that the jury from all the testimony, even if he has never before been convicted of a felony, can determine whether or not in their discretion they will recommend a suspension of his sentence. The court should not permit purely hearsay testimony as contradistinguished from general reputation or specific acts within the knowledge of the witness testifying."

This quotation lays down two propositions: first, that it is incumbent upon the defendant, when he files his plea for suspended sentence, to prove it. If he does not prove it, it is not an issue in the case, and the court should not submit the matter to the jury. Other decisions have so held. The second proposition is, that purely hearsay testimony shall not be admitted on this issue, and yet this judgment is affirmed when the defendant introduces no testimony on his plea of suspended sentence. If the defendant does not file his plea for a suspension of the sentence it can not be an issue in the case, and no testimony should be admitted bearing upon his reputation. Defendant alone can put his reputation at issue under the suspended sentence act. The State can not do it. If he files his plea and offers no testimony, it is not an issue before the jury, because he does not tender any evidence on that question. Special matters to become issues in a case when authorized must be supported as to burden of proof by the party tendering such issues. Inasmuch as appellant did not offer any testimony in regard to this plea, the court was not authorized to submit the issue to the jury. This court, as well as the trial court, recognized that as the law, and the trial court refused to so charge the jury on the matter, and at their request expressly told them they could not consider it, and yet this hearsay testimony was permitted to go before the jury and remain before them. That it is purely hearsay is not the subject of debate. The witness Kendall, answering the question as to whether he had ever heard that appellant's picture was in the rogue's gallery, stated that he had heard Mr. DeWitt say so a while ago. It was not even attempted to be shown that his picture was in the rogue's gallery, but this witness was permitted to state that he had heard Mr. DeWitt say so. This is hearsay evidence of the veriest type. It could not be introduced either upon the plea of suspended sentence, if testimony had been offered in support of that plea, much less could it be introduced in evidence to affect the defendant's standing and reputation. I feel justified in making the statement that no opinion has been written that would hold this character of testimony admissible otherwise than as the merest hearsay. In the opinion on rehearing the majority opinion does not fully copy the matter as set forth in bill of exceptions but refers to the original opinion in which it was held that the court should not permit

purely hearsay testimony as contradistinguished from general reputation
or specific acts within the knowledge of the witness testifying, and
further, even if the court on the issue of suspended sentence admitted
hearsay testimony, it became harmless in the light of all the testimony
and the fact that the jury assessed the lowest punishment. The opinion
on rehearing concedes the error but puts the affirmance on the ground
that it was harmless, especially so because appellant received the lowest
punishment. Appellant was on trial for burglary, which is a serious
felony in its nature and punishment under the Penal Code. To be
convicted of this offense is a serious matter to the defendant, whether
he be justly or unjustly convicted. If the conviction should be proper,
under the facts and law it renders a man infamous, bars him of all
rights and privileges as a citizen of Texas; he can not vote, testify, and
do other things that the citizen unconvicted of a felony can do. It is
necessarily of serious moment to him whether he be guilty or innocent.
If he be innocent or if he be convicted when he should not be, there are
other serious matters added to what has been stated where a just and
legal conviction is obtained. He is made to suffer punishment in addi-
tion to the infamy engendered by reason of the conviction which he
ought not to endure. In Texas we have at least two leading propo-
sitions with reference to the trial of criminal cases, first, the legitimate
facts must show guilt; second, only legitimate facts and legitimate
methods shall be indulged to obtain the conviction. He may be guilty,
but if methods and means are resorted to to obtain a conviction not
authorized or justified by the law, the law has been prostituted beyond
its purpose and beyond the authority invested in the court by legis-
lative enactment. We do not legally convict men in Texas on illegiti-
mate testimony or for offenses not denounced by the statute. All crimes
in Texas are statutory. In fact, there can be no violation of law in
Texas unless the Legislature has defined the offense before the man is
tried or commits the act for which he is being tried. Recognizing this
to some extent at least the majority of this court in the instant case
held that inasmuch as appellant received the lowest punishment, there-
fore this illegal testimony was harmless error. As before stated, this
testimony was not admissible on the plea of suspended sentence. The
issue was not before the jury. Defendant offered no testimony and
the court expressly so instructed the jury, and this court in the majority
opinion says the trial court was correct. Now we have the testimony
set out in a bill of exceptions, or rather the statement of the witness
recorded in the bill, which is purely hearsay, and the court says that
the statement of the witness, although hearsay, was harmless. I do not
understand how this statement of the majority opinion can be justified.
The law presumes the defendant innocent until his guilt is established
by legal testimony to the exclusion of the reasonable doubt. Here is a
case where the guilt is not conceded. The defendant is fighting for his
liberty. The burden is on the State to prove his guilt beyond a reason-
able doubt to the exclusion of the presumption of innocence. The State
is permitted to prove by the witness Kendall that a man named DeWitt

told him that defendant's picture was in the rogue's gallery, which, of course, means that he belongs to the confirmed criminal class. What becomes of the presumption of innocence? If the rogue's gallery does not mean he is a confirmed criminal, then the writer does not understand what it does mean. When a picture of a man is placed in the rogue's gallery, it publishes that he is a criminal. The fact that the picture was in the gallery was not even proved by the witness, but he stated that Mr. DeWitt told him it was there. Now we have a case sharply presented that the defendant is not legally guilty. The law says he is presumed innocent until his guilt is established by legal testimony beyond a reasonable doubt. The State is permitted to introduce testimony of the witness Kendall that Mr. DeWitt told him the defendant was such a confirmed criminal that they had placed his picture in the rogue's gallery. If this is not damaging the writer does not understand what sort of testimony or what sort of illegitimate evidence would be damaging, but the "antinomian cloak" of "harmless error" is thrown over the transaction, and the defendant in the face of this record must serve a term in the penitentiary. There may be cases of harmless error, but in a case like this it ceases to be harmless error. There are two rules the writer has always understood to be fundamental with reference to this question and to which the doctrine of harmless error can not apply. First, if the ruling of the court is error or if the introduction of the evidence would probably lead to or assist the State in getting a conviction when the guilt was in doubt, or the jury may or could take the opposite view and acquit, then the error can not be harmless. But for this ruling of the court the jury may have taken a different view and acquitted. It was a fact of damaging force and effect that the defendant's picture was in the rogue's gallery, and, therefore, a confirmed criminal, even if it had been proved as a fact, which even then ought not to have been permitted, but where it is purely hearsay that somebody else said that they had his "mug" or picture in the rogue's gallery the error becomes doubly intensified. It may have turned the scale in the minds of the jury. The jury came before the court and asked with reference to an instruction as to the plea of suspended sentence, and the court declined to give it. This shows the bent of the jurors' minds, and this identical testimony may have been the turning point in their minds. They wanted to give the defendant the benefit of the suspended sentence. The court informed them they should not consider it, but this testimony remained before that jury, and whatever else may be said about it, there is no escaping the statement and conclusion that the defendant's guilt was declared by the verdict of the jury and affirmed by this court. He is in the penitentiary, or soon will be upon the issuance of the mandate of this court. That he has been damaged is not to be questioned. Then I restate this rule, that wherever the error is of such a nature as may have probably influenced the jury to a conviction, when it might not possibly have occurred, it is reversible error. This is not debatable, and ought not to be in Texas. The second rule is that where the testimony admitted

may have led the jury to assess a higher punishment than the minimum, then it is reversible error.

There is another view that might be presented in this particular case. The testimony upon which the State relied was practically all from accomplices. The jury, of course, was instructed under those circumstances that if there is any evidence in the record *tending* to connect the defendant with the offense committed, it would be sufficient to justify the jury in a verdict of guilt, provided they believed the testimony of the accomplices. The jury does not understand or appreciate as a rule close questions of that sort; they take a broader view and do not generally understand what fact tends to connect the defendant with the offense about which the accomplice testified. This is so well recognized by the courts and bar that I do not care to discuss it. Then where a matter of this sort comes and hearsay evidence of the fact that a man is such a notorious criminal that they have placed his picture in the rogue's gallery at different places, or even as in the place testified by Kendall, it may have been taken by the jury as such evidence of his guilt that he was connected with the offense of burglary charged in the indictment.

Much might be written along these lines, but I have written as above because I believe this conviction was unjustly and illegally obtained; that defendant has not had a fair trial accorded him by the law of the land. For these reasons I respectfully enter my dissent.